UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DNET SERVICES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:08-cv-0252-DFH-JMS |
| | ) | |
| DIGITAL INTELLIGENCE SYSTEMS | ) | |
| CORP., | ) | |
| | ) | |
| Defendant. | ) | |

ENTRY ON DEFENDANT'S MOTION TO DISMISS

Plaintiff DNET Services, LLC, filed its second amended complaint in this diversity jurisdiction action on December 10, 2008. Dkt. 54. DNET is a minority-owned business enterprise and alleges that defendant Digital Intelligence Systems Corporation ("DISYS") entered into, or appeared to enter into, subcontracts with DNET in order to satisfy the State of Indiana's interest in engaging minority- and women-owned businesses in its projects. DNET alleges that DISYS never intended to actually use DNET as a provider of any services under its prime contract with the State. DNET brings claims of breach of contract (Counts I and II), fraud (Count III), and conversion (Count IV). DISYS moves to dismiss DNET's amended fraud and conversion claims in their entirety.[1] For reasons set forth in full below,

---

[1]DISYS also moves to dismiss plaintiff's prayer for punitive damages in Counts I and II (DNET's breach of contract claims). DNET has withdrawn its claim for punitive damages under those counts, and DISYS's motion on that point is granted.

DISYS's motion to dismiss DNET's conversion claim is granted, and its motion to dismiss DNET's fraud claim is denied.

I.      *Standard for Dismissal*

DISYS moves to dismiss DNET's amended claims under Rule 12(b)(6) for failing to state a claim upon which relief can be granted.  In ruling on DNET's motion, the court must assume as true all well-pleaded facts set forth in the complaint, construing the allegations liberally and drawing all inferences in the light most favorable to the plaintiff.  See *Brown v. Budz*, 398 F.3d 904, 908-09 (7th Cir. 2005).  A formulaic recitation of the elements of the cause of action is not enough to survive a motion to dismiss under the Rule, however.  See *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A plaintiff must "raise a right to relief above the speculative level" by pleading "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 555, 570.  Dismissal is warranted if the factual allegations, even when seen in the light most favorable to the plaintiff, do not plausibly entitle the plaintiff to relief.  *Id.* at 561-62.

The court's consideration of DISYS's motion to dismiss is limited to the pleadings, which consist generally of the complaint and any exhibits or documents attached to or referenced in the complaint, including here the "Teaming Agreement" between DISYS and DNET.  See Fed. R. Civ. P. 10(c) (a copy of any written instrument that is an exhibit to a pleading is a part of the pleading for all

purposes); see also *Thompson v. Illinois Dept. of Professional Regulation*, 300 F.3d 750, 753-55 (7th Cir. 2002); *Menominee Indian Tribe of Wisconsin v. Thompson*, 161 F.3d 449, 455-56 (7th Cir. 1998).

If a Rule 12(b)(6) motion to dismiss relies on matters outside the pleadings that are not excluded by the court, the motion must be treated as one for summary judgment.  See Fed. R. Civ. P. 12(d).  Where a complaint refers to a document but does not incorporate it, a party may submit a copy of the document to support or oppose a motion to dismiss as long as the document is "central" to the complaint.  See, *e.g.*, *Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).  To oppose dismissal, however, a plaintiff may also use a brief or even an affidavit to elaborate on the allegations in the complaint without converting the motion to one for summary judgment.  See *Chavez v. Illinois State Police*, 251 F.3d 612, 650 (7th Cir. 2001); see also *Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997) (plaintiff opposing dismissal may supplement the complaint with factual narration in an affidavit or brief), cited in *Free Methodist Church of North America v. Hayes*, 2005 WL 3003239, at *3 (S.D. Ind. Nov. 8, 2005).

In opposing DISYS's motion to dismiss, DNET has submitted exhibits outside of its second amended complaint, including e-mails and other communications between the parties (Pl. Exs. A, B, C, D, E) and between DISYS and the State of Indiana (Pl. Exs. F, J, K).  DNET does not directly refer to these

exhibits in its complaint, although it appears to have set forth the substance of these communications in its allegations.  See Sec. Am. Compl. ¶¶ 19(a)-(o).  The exhibits provide background and context to DNET's allegations, but do not bring forward additional or new facts that would require conversion of DISYS's motion into one for summary judgment.  The court treats DISYS's motion as a motion to dismiss.

II.      *Count IV – Conversion*

A.      *Choice of Law*

The parties disagree as to which state's law applies to DNET's conversion claim, and they seemingly disagree as to whether the question should be analyzed using choice of law doctrine sounding in contract or tort.[2]  DNET, now invoking the choice of law doctrine applicable to contract law, contends that Indiana law

---

[2]On the choice of law issue, both parties have changed course.  It is only on this, the second round of motions to dismiss, that DNET raises the possibility that Indiana law could apply to its claims based on Indiana's choice of law doctrine sounding in contract and, in the alternative, sounding in tort.  In its response to DISYS's first motion to dismiss its claims, DNET did not discuss choice of law at all and relied on Virginia and Fourth Circuit law, leading the court to conclude that DNET agreed with DISYS that Virginia law governed their relationship.  Dkt. 19 at 11-15; Dkt. 40 at 2.  In response to DNET's revived choice of law argument, DISYS analyzes the law applicable to DNET's conversion claim according to Indiana's choice of law doctrine relating to tort claims, analyzes the law applicable to DNET's fraud claim according to Indiana's choice of law doctrine relating to contract claims, and argues that under either analysis Virginia law applies.  Def. Reply 2-3.  However, in its first motion to dismiss, DISYS argued that all of DNET's claims, including its fraud and conversion claims, originated in contract, and accordingly it analyzed the choice of law issue under the doctrine as applied to contracts, not torts.  Dkt. 8 at 3-4.

will govern its conversion claim.  Pl. Response 2-3.  If tort choice of law governs, DNET argues, Indiana law will still govern.  *Id.* at 3-5.  DISYS now contends that Virginia law applies to DNET's conversion claim and that the choice of law doctrines relating to torts should apply.  Def. Reply 2.

A federal court hearing a case under diversity jurisdiction must apply the substantive law of the state in which it sits.  *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  If the laws of more than one jurisdiction might apply, *Erie* principles require a federal court to apply the forum state's choice of law rules. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Horn v. Transcon Lines, Inc.*, 7 F.3d 1305, 1307 (7th Cir. 1993).  Indiana courts permit application of different states' substantive law to a tort claim and a contract claim even though such claims are part of the same litigation.  *Simon v. United States*, 805 N.E.2d 798, 801 (Ind. 2004).

Only DNET's tort claims – for conversion and fraud – are at issue in DISYS's most recent motion to dismiss.  The court applies the choice of law doctrine applicable in tort.  In tort cases, Indiana presumes that the traditional rule – *lex loci delicti* – governs.  *Simon*, 805 N.E.2d at 805.  Under the rule, the district court applies the substantive law of the state "where the last event necessary to make an actor liable for the alleged wrong takes place."  *Hubbard Mfg. Co. v. Greeson*, 515 N.E.2d 1071, 1073 (Ind. 1987).  If that location "bears little connection" to the legal action, the presumption in favor of the location of the tort may be overcome

and additional factors may be considered.  *Id.* at 1073-74.  Other contacts that may be more relevant and should be considered  include:  (1) the place where the conduct causing the injury occurred; (2) the residence or place of business of the parties; and (3) the place where the relationship is centered.  *Simon*, 805 N.E.2d at 805; *Hubbard*, 515 N.E.2d at 1073-74.   As the Indiana Supreme Court explains, "these factors are not an exclusive list nor are they necessarily relevant in every case.  All contacts 'should be evaluated according to their relative importance to the particular issues being litigated.'  This evaluation ought to focus on the essential elements of the whole cause of action, rather than on the issues one party or the other forecasts will be the most hotly contested given the anticipated proofs."  *Simon*, 805 N.E.2d at 805, quoting *Hubbard*, 515 N.E.2d at 1074.

The parties agree that a substantive conflict exists between Indiana and Virginia law on the tort of conversion.[3]  DISYS argues that the last "event" necessary to make it liable for any alleged conversion would be its continued appropriation of the State of Indiana's money, an "event" that, DISYS asserts, "logically took place in Virginia, where DISYS operates [its] business and conducts its banking."  Def. Reply 2.  Given that the payments were made by the State of

---

[3]The parties agree that under Virginia law, DNET may not bring a conversion claim.  Virginia law does not recognize conversion of money in tort, but Indiana recognizes such a claim under very narrow circumstances.  See Pl. Response 4 (conceding that Virginia law does not recognize conversion of money in tort); Def. Reply 10 (acknowledging that, in Indiana, money may be the subject of a conversion claim).

Indiana for DISYS's participation in an Indiana-based project and based on an Indiana contract, whether the "last event necessary" for any alleged conversion took place in Indiana or Virginia is debatable.  Assuming, for purposes of this analysis only, that DISYS is correct and that the last necessary event would have taken place in Virginia, that state bears very little connection to this claim.  The parties' relationship was centered in Indiana, not Virginia.  It stemmed from a project sponsored by and payments to be made by the State of Indiana to DISYS, as the contractor, for work to be completed in Indiana for the benefit of Indiana residents.  Sec. Am. Compl. ¶¶ 3-6, 11-14,  19(a)-(f), 19(l), 19(n)-(o), 21, 26-28. The underlying dispute between DNET and DISYS has its foundation in the State of Indiana's program for minority- and women-owned businesses and contractual goals and requirements.  Sec. Am. Compl. ¶¶ 19(a)-(f), 19(l), 19(n)-(o), 21, 26-28. Virginia's connection to these events is minimal and is limited only to the fact that DISYS is headquartered and does its banking within its boundaries.  Whether or not DISYS accepted or processed the State of Indiana's payments in Virginia, and whether or not that acceptance and processing amounted to the last event necessary for a conversion claim is, in this instance, outweighed by Indiana's substantially greater connection to this matter.  Indiana law will apply to DNET's conversion claim.

    B.    *Conversion under Indiana Law*

To prove conversion under Indiana law, a plaintiff must show that the defendant knowingly or intentionally exerted unauthorized control over its property. See *Coleman v. Vukovich*, 825 N.E.2d 397, 407 (Ind. App. 2005). Under Indiana law, money may be the subject of an action for conversion, but it must be capable of being identified as a special chattel. The money must be a determinable sum that the defendant was entrusted to apply to a certain purpose. *Stevens v. Butler*, 639 N.E.2d 622, 666 (Ind. App. 1994), abrogated on other grounds by *St. Vincent Health Care Center v. Steele*, 766 N.E.2d 699, 704-05 (Ind. 2002). The refusal to pay a debt will generally not support a conversion action. *Huff v. Biomet*, 654 N.E.2d 830, 836 (Ind. App. 1995). DISYS argues that DNET has not alleged and could not possibly prove that it was entrusted with specific funds for a particular purpose, so that DNET's conversion claim should be dismissed. Def. Reply 10-12.

DNET's allegations, even if true, do not support a conversion claim under Indiana law. DISYS was awarded a contract from the State of Indiana, and represented to the State of Indiana that it would meet certain goals under the State's minority- and women-owned business program. But its failure to enlist DNET to actually perform services under its contract with the State and the Teaming Agreement could not have amounted to DISYS retaining a determinable sum "owned" by DNET or that could be attributable to DNET. DNET does not allege that it had performed any services that would entitle it to payment. A prospective payment of an unknown amount is simply too vague to support a

conversion claim for specific money.  DISYS's motion to dismiss is granted with respect to DNET's conversion claim.

III.    *Count III – Fraud*

The parties seemingly agree that there is no substantive conflict between the laws of Indiana and Virginia with regard to the tort of fraud.  Def. Reply 10; Pl. Response 4. The court need not determine now which state's law to apply to DNET's fraud claim.

Rule 9(b) requires that litigants "state with particularity the circumstances constituting fraud."  The purpose of the heightened pleading requirement in fraud cases is to force the plaintiff to do more than the usual investigation prior to filing the complaint.  See *United States ex rel. Fowler v. Caremark RX, L.L.C.,* 496 F.3d 730, 740 (7th Cir. 2007); *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999).  Greater investigation is warranted because unchecked fraud allegations can harm a defendant's reputation, because fraud allegations sometimes ask courts to rewrite contracts or disrupt relationships, and because, if a plaintiff has suffered a loss and wants to find someone to blame for it, fraud charges can be brought irresponsibly.  See *Ackerman*, 172 F.3d at 469.  The heightened pleading standard of Rule 9 and the pre-complaint investigation needed to support it "assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate."  *Id.*  Generally, to satisfy this

requirement, the complaint must set forth the who, what, when, where, and how of the fraud. *Id.*; see also *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).

DISYS argues that DNET has failed to satisfy this heightened pleading standard for fraud claims and has failed to state a claim on which relief can be granted. Although DISYS concedes that DNET "detailed certain written and oral communications" in its second amended complaint, DISYS argues that DNET has failed to plead its fraud claim with sufficient particularity under Rule 9(b) because it did not specifically indicate that any of those communications amounted to an intentional misrepresentation relied upon by DNET. Def. Br. 4. Further, DISYS contends that DNET's fraud claim must be dismissed as insufficiently pled because DNET failed to allege that any of the communications detailed in DNET's complaint were false at the time they were made, because DNET failed to allege that any of those representations were material, and because DNET failed to allege that it suffered damages as a result of its reliance on DISYS's representations. Def. Br. 5-6.

The court finds that DNET has satisfied both the substance and purpose of Rule 9(b). DNET is not required to use any magic words to bring its fraud claim, but must plead at least "the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). In supplying the who, what, when, where, and how of the specific communications underlying its fraud claim,

DNET has done so and has satisfied Rule 9(b).  See Sec. Am. Compl. ¶¶ 19(a)-(o), 22-24.  DISYS is now on notice of DNET's claim, including the specific representations that DNET alleges constitute that claim under Rule 9(b).  Whether those details will support a fraud claim when scrutinized by a finder of fact is another question, but one that cannot be answered here.  DISYS's motion to dismiss DNET's fraud claim for failure to plead with sufficient particularity is denied.

DISYS also argues that DNET's fraud claim should be dismissed under Rule 12(b)(6) for failure to state a claim because it is "no more than an impermissible repackaging of its breach of contract claims."  Def. Reply 5-8.  DISYS cites Indiana cases holding that claimants bringing both breach of contract and fraud claims must prove those causes of action independently of one another.  See Def. Reply 6, quoting *Tobin v. Ruman*, 819 N.E.2d 78, 86 (Ind. App. 2004) (evidence of alleged misrepresentations surrounding contract terms "merely establishes" breach of contract, but plaintiff "offered no evidence establishing that [defendants'] actions constitute the separate and independent tort of fraud").

To recover on a theory of fraud under either Indiana or Virginia law, a plaintiff must demonstrate:  (1) a material representation of a past or existing fact that (2) was false, (3) was made with knowledge or reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied upon by the complaining party, and (6) proximately caused injury to the complaining party.

*State Farm Mut. Auto Ins. Co. v. Remley*, 618 S.E.2d 316, 321 (Va. 2005); *Sample v. Kinser Ins. Agency, Inc.*, 700 N.E.2d 802, 805 (Ind. App. 1998). Actual fraud may not be based on representations of future conduct, on broken promises, or on representations of existing intent that are not executed. See *Blair Constr. v. Weatherford*, 485 S.E.2d 137, 139 (Va. 1997); see also *Anderson v. Indianapolis Indiana AAMCO Dealers Advertising Pool*, 678 N.E.2d 832, 837 (Ind. App. 1997). At this point, DNET's fraud claim survives another day because it is pled with sufficient particularity and because DNET has brought forward alleged misrepresentations by DISYS that may have concerned past or existing facts. Further discovery may establish, however, that DISYS's alleged misrepresentations amounted only to false promises of how it would act in the future, which cannot serve as the basis of a common law fraud claim. For now, however, DNET's case against DISYS is at the pleading stage, not the proof stage, and DNET has satisfied its pleading obligations. DISYS's motion to dismiss DNET's fraud claim is denied.

## Conclusion

For the foregoing reasons, DISYS's motion to dismiss DNET's conversion claim is granted, and DISYS's motion to dismiss DNET's fraud claim is denied. DISYS's motion to dismiss DNET's prayer for punitive damages for breach of contract is granted, and DNET's motion to dismiss its fraud claim without prejudice to allow for additional discovery is denied as moot.

So ordered.

Date: May 5, 2009

DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Keith Gerald Blazek
CRAVEN, HOOVER & BLAZEK, P.C.
kblazek@chblawfirm.com, kbyrd@chblawfirm.com, raufderheide@chblawfirm.com

Christopher W. Mahoney
DUANE MORRIS LLP
cmahoney@duanemorris.com

Richard Thomas Ruzich
DUANE MORRIS LLP
rtruzich@duanemorris.com, paskinner@duanemorris.com